DELBELLO DONNELLAN WEINGARTEN　　　　　Hearing Date: May 19, 2014
WISE & WIEDERKEHR, LLP　　　　　　　　　　Hearing Time: 11:00 a.m.
*Proposed Attorneys for the Debtors*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:　　　　　　　　　　　　　　　　　　　　　Chapter 11

QUEEN OF HEARTS CRUISES, INC. and　　　　Case No. 14-11219 (MG)
A&S CRUISELINES, INC.,　　　　　　　　　　　Case No. 14-11297 (MG)
　　　　　　　　　　　　　　　　　　　　　　　(Joint Administration Pending)

　　　　　　　　　　Debtors.
------------------------------------------------------------X

**NOTICE OF HEARING ON DEBTORS' MOTION FOR: (I) ORDER
AUTHORIZING DEBTORS TO INCUR POST-PETITION SECURED
INDEBTEDNESS, (II) GRANTING SECURITY INTERESTS AND
SUPERPRIORITY CLAIMS PURSUANT TO SECTIONS 105(a), 363(e)
AND 364(c) AND (d) OF THE BANKRUPTCY CODE, (III)
AUTHORIZING USE OF CASH COLLATERAL AND COLLATERAL
AND GRANTING ADEQUATE PROTECTION PURSUANT TO
SECTIONS 105, 361, 363(e) AND 364(d)(1)(B) OF THE BANKRUPTCY
CODE, AND (IV) GRANTING OTHER RELATED RELIEF**

**PLEASE TAKE NOTICE**, that upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by their proposed attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, and its request for an Order Scheduling Hearing, the undersigned will move this Court, before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, Courtroom 501, New York, New York on the 19th day of May, 2014 at 11:00 a.m., or as soon thereafter as counsel may be heard on the Debtor's request for entry of an order, *inter alia*, authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis pursuant to the

terms and conditions of the Commitment Letter and Term Sheet annexed to the Motion by and between the Debtors and Cross County Funding, together with such other and further relief as is just and proper under the circumstances.

**PLEASE TAKE FURTHER NOTICE**, that objections to the relief requested in the Motion must be in writing, stating with specificity the basis or bases on which such party in interest objects to the relief requested, filed with the Court on the Court's Electronic Case Filing System, at www.ecf.nysb.uscourts.gov (login and password required), with a copy to Chambers, and must be served upon Debtor's counsel so as to be received at least seven (7) days before the Final Hearing.

Dated: White Plains, New York
        May 14, 2014

                        DELBELLO DONNELLAN WEINGARTEN
                        WISE & WIEDERKEHR, LLP
                        *Proposed Attorneys for Debtors*
                        One North Lexington Avenue
                        White Plains, New York 10601
                        (914) 681-0200
                        JPasternak@DDW-law.com


                        By:   */s/ Jonathan s. Pasternak*
                                Jonathan S. Pasternak

1409397
«Matter Matter ID»

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtors*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                          Chapter 11

QUEEN OF HEARTS CRUISES, INC. and                               Case No. 14-11219 (MG)
A&S CRUISELINES, INC.,                                          Case No. 14-11297 (MG)
                                                                (Joint Administration Pending)
                          Debtors.
-----------------------------------------------------------X

**DEBTORS' MOTION FOR: (I) ORDER AUTHORIZING DEBTORS TO
INCUR POST-PETITION SECURED INDEBTEDNESS, (II) GRANTING
SECURITY INTERESTS AND SUPERPRIORITY CLAIMS PURSUANT TO
SECTIONS 105(a), 363(e) AND 364(c) AND (d) OF THE BANKRUPTCY
CODE, (III) AUTHORIZING USE OF CASH COLLATERAL AND
COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT
TO SECTIONS 105, 361, 363(e) AND 364(d)(1)(B) OF THE BANKRUPTCY
CODE, AND (IV) GRANTING OTHER RELATED RELIEF**

**TO:    THE HONORABLE MARTIN GLENN,
         UNITED STATES BANKRUPTCY JUDGE:**

Queen of Hearts Cruises, Inc. and A&S Cruiselines, Inc., (collectively the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases (the "Case"), hereby submit this motion (the "DIP Motion"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, *inter alia*, authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis pursuant to the terms and

conditions of the Commitment Letter and Term Sheet (the "DIP Agreement") by and between the Debtors and Cross County Funding (the "DIP Lender").

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 361, 362, 363 and 364, and Federal Rule of Bankruptcy Procedure 4001.

## BACKGROUND

4. On April 25, 2014, Queen of Hearts Cruises, Inc. filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. On May 1, 2014 A&S Cruiselines, Inc. filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

5. The Debtors have continued in possession of their property and the management of their business affairs as Debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors, trustee or examiner has been appointed.

6. The Debtors are engaged in the business of owning and operating a passenger cruise vessel registered as *First Lady*, but known as the *Queens of Hearts*, United States Coast Guard Official Number: 658104, Length: 90', Flag: USA (the "Queen").

## SUMMARY OF THE DEBTORS PREPETITION INDEBTEDNESS[1]

7. The Debtors have three secured creditors: (i) New York Business Development Corp. in the amount of approximately $1,050,000; (ii) Small Business Administration in the amount of approximately $400,000; and (iii) Afloat NYC Inc. in the amount of approximately $350,000.

## THE DEBTORS NEED FOR POSTPETITION FINANCING

8. The Debtors filed their Chapter 11 petition with the principal objective of obtaining financing in order to make the necessary repairs and upgrades to the Queen so that it passes the U.S. Coast Guard certifications and it is in the necessary condition to start booking events for the upcoming 2014 Season.

9. Absent financing, the Debtors have insufficient cash to maintain the Queen and to make the necessary repairs so that it can operate during the 2014 Season.

10. The Debtors urgently need credit and additional capital to upgrade the Queen so it is operational and able to produce a profit, thereby realizing its true value in excess of $1.1 million. Absent availability of new credit, the Queen will no longer be operational, and the liquidation value of the Queen will likely be $0. Thus, new and additional financing will allow the Debtors to preserve its asset for its creditors.

---

[1] Other than to the extent set forth herein, the Debtors make no representations or admissions as to the extent and validity of the liens asserted against it by various creditors described herein or those that later assert secured liens against the Debtors. The Debtors hereby reserve all rights to challenge said liens and preserve all defenses, set off rights and counterclaims they may have against the creditors.

3

11. In sum, without the immediate access to post-petition financing, the Debtors expect to suffer immediate and irreparable harm to its estate and creditors. The Debtors' ability to preserve the going concern value of its estate for the benefit of its creditors depends upon the interim and final relief requested in this DIP Motion.

### SUMMARY OF THE DEBTOR'S PROPOSED DIP FINANCING[2]

12. The Debtors have determined, in the exercise of its sound business judgment, that to meet its working capital needs, it requires a postpetition credit facility in substantially the form described herein. Accordingly, subject to the Court's approval, the Debtors have determined to enter in the DIP Agreement with the DIP Lender.

13. The terms of the DIP Agreement are set forth in the Commitment Letter and Term Sheet attached hereto as **Exhibit "A."** The key provisions of the DIP Agreement are as follows:

Lender: Cross County Funding

Borrower: Queen of Hearts Cruises, Inc. and A&S Cruiselines, Inc.

Loan Amount: Three Hundred Fifty Thousand Dollars ($350,000)

Term Loan: One (1) Year

Rate of Interest: Twelve (12%) Percent

Carve Out. "Carve Out" means a carve-out for (i) fees and expenses of professionals retained by the Borrower or an official committee of unsecured creditors appointed by the Bankruptcy Court in an aggregate amount, (ii) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of the Bankruptcy Court; and (iii) claims arising under Chapter 5 of the Bankruptcy Code in Borrower's pending Chapter 11 case, and any proceeds thereof.

---

[2] The summaries and descriptions of the terms and conditions of the DIP Agreement and the proposed Order set forth in the DIP Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the DIP Agreement and the Order. In the event there is a conflict between the DIP Motion and the DIP Agreement or the Order, the DIP Agreement and/or the Order, as applicable, shall control in all respects. Any capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Documents and/or the Order.

4

DIP Liens.  In order to secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens upon (collectively, the "DIP Liens"): (i) all of the personal property of Borrower, including, but not limited to, the following property in each case, wherever located and now owned or at any time hereafter acquired by Borrower or in which Borrower now has or at any time in the future may acquire any right, title or interest (collectively, the "Personal Collateral") as security for the full and timely payment, observance and performance of this Agreement (defined terms used in this Section 6 but not otherwise defined in this Agreement have the meanings assigned to such terms in the UCC); and (ii) a first priority lien on and security interest in Borrower's passenger cruise vessel registered as First Lady, but known as the Queen of Hearts, U.S. Coast Guard Official Number 658104, length: 90', Flag: USA (the "Queen") (collectively the "DIP Collateral").

DIP Lien Priority.  Subject to the Carve-Out, the obligations of the Borrower under this Agreement (i) pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed super-priority administrative expenses claims in the Case (the "DIP Administrative Claims") and a Superpriority Claim having superpriority over any and all administrative expenses, diminution claims and all other claims against Borrower, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code or otherwise which superpriority claims shall be payable in accordance with the terms of the Orders; (ii) pursuant to section 364(d)(1) of the Bankruptcy Code, are secured by a valid, binding, continuing, enforceable, fully-perfected, first priority Lien on, and security interest in, the Personal Collateral and Queen.

**THE LIENS GRANTED UNDER THIS CLAUSE SHALL BE SENIOR IN ALL RESPECTS TO THE SECURITY INTERESTS IN, AND LIENS ON, THE PRE-PETITION SECURED LIENS AND (I) SHALL NOT BE SUBJECT OR SUBORDINATE TO (A) ANY LIEN OR SECURITY INTEREST THAT IS AVOIDED AND PRESERVED FOR THE BENEFIT OF BORROWER AND ITS ESTATE UNDER SECTION 551 OF THE BANKRUPTCY CODE OR (B) ANY LIENS ARISING AFTER THE PETITION DATE, OR (II) SUBORDINATED TO OR MADE *PARI PASSU* WITH ANY OTHER LIEN OR SECURITY INTEREST UNDER SECTIONS 363 OR 364 OF THE BANKRUPTCY CODE OR OTHERWISE.**

<u>Automatic Perfection of DIP Liens</u>.

The DIP Liens granted to the DIP Lender under the DIP Agreement and the Interim Order are valid, binding, continuing, enforceable and fully-perfected with the priorities herein and therein set forth.

## **REQUEST FOR APPROVAL OF THE DIP AGREEMENT**

14. As described above, it is essential to the success of the Case that the Debtors immediately obtain access to sufficient post-petition financing, without which the Debtors' ability to sustain any business operations will be impossible. The Debtors' continuing ability to maximize the value of its estate for the benefit of its creditors, and its ability to reorganize completely depends upon approval of the DIP Agreement and the related actions requested herein.

15. Section 364 of the Bankruptcy Code[3] distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, pursuant to Section 364(c) of the Bankruptcy Code, a court may authorize a debtor-in-possession to obtain credit or incur debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or combination of the foregoing. Pursuant to section 364(d) of the Bankruptcy Code,[4] a court may authorize a debtor-in-possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is already subject to a lien.

16. As a condition to entering into the DIP Agreement and obtaining the Debtors' needed liquidity, the Debtors must obtain authorization, pursuant to sections 364(c) and (d) of the

---

[3] Section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

[4] Section 364(d) of the Bankruptcy Code provides as follows:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

7

Bankruptcy Code, (a) to grant the DIP Lender automatically perfected security interests in and liens upon all of the DIP Collateral, including, without limitation, all property constituting Cash Collateral, and (b) grant the lender allowed Superpriority administrative expense claim status in the Case and any Successor Case.

### A. Approval Under Section 364(c) of the Bankruptcy Code

17. The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." *See In re Garland Corp.,* 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "although a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) & (b)"); *In re Crouse Group, Inc.,* 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code).

### B. The Debtors Were Unable to Obtain Necessary Postpetition Financing on an Unsecured Basis Under Section 364(a) or (b) of the Bankruptcy Code

18. Despite the Debtors' best efforts, pre-petition, the Debtors could not have obtained a working capital/loan facility of the type and magnitude required in this Case on an unsecured or even junior secured basis. The only financing the Debtors were able to procure was financing which would "prime" the existing secured creditors.

19.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088; *see also Ames,* 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom*, *Anchor Savings Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

20.     The Debtors submit that, other than the DIP Agreement, there are no better financing alternatives available under the circumstances. As this Court is undoubtedly aware, in the current economic environment, the financing options for a wide variety of companies, particularly those involved in sub-prime financing, are extremely limited.

21.     Moreover, as noted above, all of the Debtors' assets are encumbered by liens and security interests. Alternative financing in an amount sufficient to repay those creditors and provide additional liquidity is simply not available given the current state of the financial markets, the nature and state of the Debtors' business operations and the size of the financing required.

C. **Approval of Priming Liens**

22.     If a debtor-in-possession is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the debtor-in-possession may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly referred to as a "priming lien." 11 U.S.C. § 364(d). Section 364(d) of the Bankruptcy Code, which governs the incurrence of postpetition debt secured by priming liens, provides that the court, after notice and hearing, may authorize the debtor-in-possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

23.     As discussed above, the Debtors have explored alternatives and lacks alternative financing options. In light of that, and given the state of the credit markets, the Debtors have concluded that financing comparable to that provided by the DIP Lender under the DIP Agreement is currently unobtainable without the priming of the prepetition liens. *See In re Utah 7000, L.L.C.,* 2008 WL 2654919, *2 (Bankr. D. Utah July 3, 2008) (finding that the debtor unable to obtain financing without priming of prepetition liens); *In re Mosello,* 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996) (same); *In re 495 Central Park Ave. Corp.,* 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (same); *In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (same).

24.     Thus, the Debtors are unable to obtain alternative post-petition financing through credit allowable on an unsecured basis and without granting priming liens. In these

10

circumstances, the Debtors, in the exercise of its considered business judgment and in consultation with its professional advisors, has determined that the financing provided by the DIP Agreement is the most favorable under the circumstances and provides the Debtor the liquidity necessary to maintain the going concern value of its business pending the conclusion of the Debtors' reorganization process.

### D. The Postpetition Loan is Necessary to Preserve Assets of the Debtors' Estate

25. As stated above, the DIP Agreement is essential so that the Debtors make the necessary repairs to make the Queen operational. Absent such repairs, the Debtors will not have the resources or support necessary to fund the necessary repairs and maintenance.

26. The success of this case thus entirely depends on the approval of this motion and the DIP Agreement. If the DIP Agreement is denied, the inability to fund the necessary repairs and maintenance of the Queen would cause the Queen to cease operations altogether, thereby causing irreparable harm to the Debtors' estates. In contrast, once the DIP Agreement is approved, the Debtors can immediately begin the necessary repairs and maintenance so it can secure contracts for the 2014 Season, thereby realizing its true market value as an operational entity with a valuation in excess of $1.1 million.

### E. The Terms of the DIP Agreement are Fair, Reasonable and Appropriate

27. In the Debtor's business judgment, the DIP Agreement is the best financing option available in the circumstances of this case. The purpose of the facility is to enable the Debtors to preserve and maximize the value of its estate.

28. The proposed DIP Agreement provides, generally, that the liens and super priority claims granted to the DIP Lender with respect to the DIP Agreement shall be subject and subordinate to the Carve-Out (defined hereinabove).

11

**F. Application of the Business Judgment Standard**

29. After appropriate and extensive investigations and analysis, and robust, good faith, and arm's length negotiations among the Debtor and the DIP Lender, the Debtor's management concluded that the DIP Agreement is the best alternative available in the circumstances of these cases.

30. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment on behalf of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); *In re TM Carlton House Partners, LTD,* 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts); *cf. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.,* 318 U.S. 523, 550 (1943) (holding that decisions regarding the rejection or assumption of a lease is left to the business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus. Inc.,* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code").

12

31.     In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

32.     The Debtors have exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to incur debt under the DIP Agreement. The terms of the DIP Agreement are fair and reasonable and are in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to enter into the DIP Agreement and obtain funds from the DIP Lender on the senior secured, administrative "superpriority" basis described above, pursuant to sections 364(c) and (d) of the Bankruptcy Code.

## **GOOD FAITH**

33.     The Debtors submit that the terms and conditions of the DIP Agreement and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances. As stated above, the Debtors and the DIP Lender negotiated the terms and conditions of the DIP Agreement and the use of Cash Collateral in good faith and at arm's length. Moreover, the Debtors' decision to enter into the DIP Agreement was an exercise of the Debtors' prudent business judgment. Therefore, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the DIP Agreements, or any interim or final order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

**REQUEST FOR INTERIM RELIEF PURSUANT TO LOCAL
BANKRUPTCY RULE 9077-1 AND NOTICE OF THIS MOTION**

34. The Debtors respectfully request that the Court permit the Debtors to borrow funds on an interim basis pending a final hearing in order to sustain operations pending such a final hearing and avoid irreparable harm to the estate.

35. Typically, a motion to obtain credit is a twenty (21) day motion pursuant to Federal Rule of Bankruptcy Procedure 2002. However, the Federal Rules of Bankruptcy Procedure provide for a shortening of time under certain circumstances.

36. Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

(c) *Reduction.*

(1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 4008(a), 8002, and 9033(b). In addition, the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

37. Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear a motion such as the Motion herein on shortened notice, for cause shown.

38. As discussed in detail above, the Queen needs essential repairs and maintenance in order to become operational for the season, which requires the financing requested herein. Any delay in commencing the repairs will directly impact the Debtors' ability to commence prompt operations.

39. Accordingly, the Debtors request that the Court grant the Debtors interim, pre-

final hearing authority to borrow pending a final hearing.

40. The Debtors respectfully submit that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion and refers the Court to the Affidavit of Steven Salsberg pursuant to Local Bankruptcy 9077-1 in support of a hearing on shortened notice ("9077-1 Affidavit") which is annexed hereto as **Exhibit "B."**

41. This Motion will be served via overnight delivery upon (i) all parties asserting secured claims against the Debtors, (ii) top 20 unsecured creditors, (iii) the Office of the U.S. Trustee, and (iv) and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d).

## NO PREVIOUS RELIEF REQUESTED

42. The Debtors have not previously sought the relief requested herein from this Court or any other court.

**WHEREFORE**, the Debtors respectfully requests that the Court grant the Motion together with such other and further relief as is just and proper.

Dated: White Plains, New York
        May 6, 2014

                                DELBELLO DONNELLAN WEINGARTEN
                                WISE & WIEDERKEHR, LLP
                                *Attorneys for Debtors*
                                One North Lexington Avenue
                                White Plains, New York 10601
                                (914) 681-0200
                                JPasternak@DDW-law.com

                                By:    */s/ Jonathan s. Pasternak*
                                        Jonathan S. Pasternak

15