| | |
|---|---|
| LEMERY GREISLER LLC<br>*Attorneys for New York Business*<br>*Development Corporation*<br>50 Beaver Street<br>Albany, New York 12207<br>(518) 433-8800<br>Paul A. Levine, Esq.<br>Meghan M. Breen, Esq. | Hearing Date: June 12, 2014<br>Hearing Time: 10:00 a.m.<br>Objection Deadline: June 5, 2014 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>QUEEN OF HEARTS CRUISES INC., and<br>A&S CRUISELINES, INC.<br><br>                    Debtors. | Chapter 11<br><br>Case No: 14-11219 (MG)<br>Case No: 14-11297 (MG)<br>(Joint Administration Pending) |

**MOTION OF NEW YORK BUSINESS DEVELOPMENT CORPORATION**
**FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY OR**
**ALTERNATIVELY, FOR ADEQUATE PROTECTION**

New York Business Development Corporation ("NYBDC") submits this motion ("Motion") in the chapter 11 cases of Queen of Hearts Cruises Inc. and A&S Cruiselines, Inc. (the "Debtors") for entry of an order granting NYBDC relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, or alternatively, for adequate protection pursuant to section 361 of the Bankruptcy Code. In support of the Motion, NYBDC states as follows:

**PRELIMINARY STATEMENT**

1.    NYBDC is a secured creditor of the Debtors, holding a First Preferred Mortgage on the M/V FIRST LADY (O.N. 658104) (the "Vessel" or "Queen"), a 90 foot ship that the Debtors use in their party cruise business. NYBDC is owed approximately $1,177,624.36 in principal, interest, fees and expenses, as of May 1, 2014.

1

2. NYBDC was exercising its rights against the Debtors in a District Court action, when on the eve of the seizure of the Vessel, Debtor Queen of Hearts filed its chapter 11 petition.

3. NYBDC is entitled to relief from the automatic stay to pursue its remedies against the Vessel for cause, including the Debtors' failure to make payments on its secured loans, Debtors' failure to maintain insurance for the mortgaged Vessel and lack of adequate protection to NYBDC and a non-existent equity cushion. Upon information and belief, the Vessel's Coast Guard certification also expired on May 19, 2014, which can have a dramatic effect on the value of the Vessel.

4. Alternatively, NYBDC is entitled to adequate protection payments from the Debtors, proof that the Debtors have obtained insurance for the Vessel, and proof that the Vessel is Coast Guard certified.

## BACKGROUND

**The Chapter 11 Cases**

5. On April 25, 2014, Queen of Hearts Cruises, Inc. filed its voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York.

6. On May 1, 2014, A&S Cruiselines Inc. ("A&S") also filed a chapter 11 petition. A&S is the owner of M/V First Lady (O.N. 658104).

7. The Debtors filed a Motion for Joint Administration on May 7, 2014 (D.N. 5). The motion is still pending.

**The Secured Loan**

8. On April 28, 2010, the Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with NYBDC pursuant to which NYBDC granted a loan to the Debtors in

the principal amount of $1,100,000 (the "Loan"). A copy of the Loan Agreement is attached hereto as Exhibit "A".

9.  As evidence of the indebtedness owed to NYBDC under the Loan, the Debtors executed and delivered a Note, dated April 28, 2010, in favor of NYBDC. A copy of the Note is attached hereto as Exhibit "B".

10. In connection with the Loan and as security for repayment of the Note, A&S executed and delivered to NYBDC a First Preferred Mortgage (the "Mortgage") pursuant to which A&S granted NYBDC a mortgage on the Vessel, including her engine, tackle, equipment, and appurtenances. The Mortgage was filed with the United States Coast Guard, National Vessel Documentation Center as Batch Number: "745110," Document ID: "12011834". A copy of the Mortgage is attached hereto as Exhibit "C".

11. In order to induce NYBDC to make the Loan to the Debtors, the Loan was guaranteed by Unconditional Guarantees of the following entities and individual, all dated April 28, 2010: (i) Hot NY Tickets, Ltd., (ii) Caesaria Holdings, LLC, (iii) Salsberg Group LLC, (iv) Promoceans Limited, and (v) Steven Salsberg (collectively, the "Guarantees"). Copies of the Guarantees are attached hereto as Exhibit "D".

12. The Note was amended pursuant to a Note Modification Agreement and a Restated Note both dated May 12, 2011. Copies of the first Note Modification Agreement and Restated Note are attached hereto as Exhibit "E".

13. The Note was further amended on October 31, 2011 pursuant to the second Note Modification Agreement and Restated Note. Copies of the second Note Modification Agreement and Restated Note are attached hereto as Exhibit "F".

3

14. NYBDC is the owner and holder of the Loan Agreement, Mortgage, Guarantees, Note and all Note modifications (collectively, the "<u>Loan Documents</u>").

15. Upon information and belief, there are two other junior lien-holders on the Vessel: (i) the United States Small Business Administration in the amount of approximately $400,000 and (ii) Afloat NYC Inc. in the amount of approximately $350,000. *See also* Declaration of Steven Salsberg Pursuant to Bankruptcy Rule 1007-2, at ¶ 13 (D.N. 7).

**<u>Default and District Court Action</u>**

16. The Loan Documents provided that the Debtors were permitted to pay interest only from July 9, 2011 through December 9, 2011.

17. The Loan Documents further provided that commencing January 9, 2012 and on the 9th day of each month thereafter the Debtors were required to repay the Loan in monthly installments of principal and interest in the amount of $12,910.24.

18. The Debtors defaulted under the Loan Documents by, among other things, failing to pay the monthly installment of principal and interest due on August 9, 2012.

19. NYBDC sent a letter, dated as of December 23, 2013, to the Debtors accelerating the Loan and demanding immediate and full payment on the outstanding indebtedness under the Loan Documents. A copy of the demand letter is attached hereto as Exhibit "G".

20. Additionally, the Debtors have failed to maintain proper insurance on the Vessel as required by the Loan Documents, forcing NYBDC to obtain a force-placed insurance policy for the Vessel at significant cost to NYBDC.

21. On March 7, 2014, NYBDC filed its Verified Complaint in Admiralty against the Vessel, *in rem*, in the United States District Court for the Eastern District of New York seeking, among other things, an arrest of the Vessel, a judgment in the principal amount of $1,049,109.36

plus interest, fees and expenses, and a sale of the Vessel free and clear of all liens. *See New York Business Development Corporation v. M/V First Lady (O.N. 658104) her engines, tack, equipment, and appurtenances, etc., in rem (E.D.N.Y. 14-cv-1541).*

22. Debtor Queen of Hearts Cruises, Inc. filed its chapter 11 petition just before NYBDC was to seek the arrest of the Vessel and its supervision and control by a custodian.

23. As of May 1, 2014, the Debtors owe NYBDC approximately $1,177,624.36 in principal, interest, fees and expenses. For each day after May 1, 2014, interest accrues at $174.85 per diem. In addition, the force-placed insurance premium to cover the Vessel costs NYBDC $14.58 per diem, effective as of April 14, 2014.

**DIP Financing**

24. On May 14, 2014, the Debtors filed their motion (the "DIP Motion") to incur post-petition financing from John Klein in the principal amount of $350,000 at 12% interest for a term of one year, plus a fee of 4 points ($14,000) (D.N. 8). The DIP Motion requested a priming lien for the DIP lender over NYBDC's first position liens on all of the Debtors' collateral, including the Vessel.

25. On May 19, 2014, the Debtors filed the Declaration of Steven Salsberg in further support of the DIP Motion (the "Salsberg Declaration") (D.N. 13).

26. NYBDC filed an objection to DIP Motion on May 20, 2014.

## JURISDICTION

27. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

28. By this Motion, NYBDC respectfully requests either (a) entry of an order granting relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, or alternatively, (b) entry of an order requiring adequate protection pursuant to section 361 of the Bankruptcy Code.

## BASIS OF RELIEF REQUESTED

### "Cause" Exists to Lift the Stay

29. The filing of the Debtors' chapter 11 cases stayed NYBDC's District Court action. 11 U.S.C. § 362(a).

30. Bankruptcy Code section 362(d)(1) provides that the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Section 362(d) is mandatory and the Court must lift the stay if NYBDC prevails. *See In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y 1994)

31. Although the term "adequate protection" is not defined in the Bankruptcy Code, at a minimum "it means that a secured creditor must be given reasonable assurance that the value of its secured interest in an item of property is, and will continue to be, protected by the debtor." *In re Cooley*, 37 B.R. 590, 592 (Bankr. E.D. Pa. 1984).

32. The moving party bears the initial burden of showing "cause" for relief, but once a *prima facie* case has been established, the debtor has the ultimate burden of proof to show that cause does not exist to grant relief from the stay. *In re Montague Pipeline Technologies Corp.*, 209 B.R. 295, 305 (Bankr. E.D.N.Y. 1997).

33. A "debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay." *In re Taylor*, 151 B.R. 646, 648

(E.D.N.Y. 1993); *See also In re Balco Equities Ltd., Inc.*, 312 B.R 734, 749 (Bankr. S.D.N.Y 2004) ("A continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay. . .")(*quoting In re James River Assocs.*, 148 B.R. 790 (E.D.Va. 1992)); *Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'Ship*, 153 B.R. 204, 208 (N.D. Ill. 1993) (movant can meet burden of proof by establishing debtor's failure to make periodic payments on secured debt).

34. As set forth above, NYBDC holds a properly perfected Mortgage over the Vessel. However, NYBDC lacks adequate protection in the property. The Debtors have not made any payments of principal or interest on account of the Mortgage or Loan since July 23, 2013, which represented the payment due July 9, 2012. Moreover, upon information and belief, the Debtors may not have the current means or ability to make its contractual payments to NYBDC.

35. Some courts have also held that "cause" will only be found when the failure to make monthly payments corresponds with a nonexistent equity cushion. *See Balco Equities,* 312 B.R at 749 (*quoting James River Assocs.*, 148 B.R. 790) (secured creditor not adequately protected despite "slight equity cushion"); *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) ("where the value of the collateral substantially exceeds the secured creditor's claim, a debtor's breach of his financial obligation alone may not constitute 'cause' because the equity cushion in the collateral may provide the secured creditor with adequate protection.").

36. The Debtors state in the DIP Motion that the value of the Vessel is "in excess of $1.1 million." *See* DIP Motion at ¶¶ 10, 26. The Salsberg Declaration further indicates that the estimated value of the Vessel (without the DIP loan) is $800,000 and even less if the Vessel is not certified. *See* Salsberg Declaration at ¶ 19. NYBDC's secured claim is currently

$1,177,624.36 plus accruing interest and the premium costs on the force-placed insurance. There is zero equity cushion to protect NYBDC's secured interests.

37. Although the Salsberg Declaration argues in one paragraph that if the DIP loan is approved, the value of the Vessel will increase to a "minimum of $1.3-$1.5 million" (Salsberg Declaration at ¶ 20) and in a different paragraph proclaims that the value will increase to "more than $1.6M" (Salsberg Declaration at ¶ 17), these are nothing more than bald assertions unsupported by any evidence.

38. The Debtors also represented that the Vessel required repairs and maintenance in order to obtain the required Coast Guard approvals, which upon information and belief expired on May 19, 2014. If the Vessel is not certified, the Vessel will have reduced commercial value and will be more difficult to sell.

39. Additionally, the Debtors failure to maintain insurance on the property put NYBDC's secured interests in jeopardy causing NYBDC to obtain its own force-placed insurance. A secured creditor lacks adequate protection if there is a threat of decline in the value of the property; failure to maintain property insurance is one of those threats. *See Elmira Litho,* 174 B.R. at 902 (*citing to In re Brown*, 78 B.R. 499, 503 (Bankr. S.D. Ohio 1987)).

40. Finally, the proposed DIP loan purports to repay the DIP Lender in full within one year without any explanation of how this is possible or feasible. If within one year the Debtors cannot repay the DIP loan, the DIP lender – who will be holder of a superpriority lien on the Debtors' assets, including the Vessel, if the DIP Motion is approved - could seek to exercise its rights over the Debtors' property leaving NYBDC completely unsecured, despite the numerous protections it bargained for pre-petition.

8

**<u>Adequate Protection Payments Warranted</u>**

41. Alternatively, should the Court decline to grant NYBDC's request for relief from the automatic stay, NYBDC requests that the Court enter an order, pursuant to Bankruptcy Code section 361, directing the Debtor to (i) make adequate protection payments to NYBDC, (ii) obtain and provide proof of insurance that protects NYBDC's interests and is otherwise adequate for Debtor's operations, and (iii) obtain and provide proof that the Vessel is Coast Guard certified.

42. Section 361 states that

> [w]hen adequate protection is required under section 362 ... of this title of an interest of an entity in property, such adequate protection may be provided by - (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title ... results in a decrease in the value of such entity's interest in such property.

11 U.S.C. § 361.

43. Given the nature of this Vessel that is easily moved, indeed, moved outside the geographic jurisdiction of this Court and, during operations, has constant movement and interaction with other vessels and the public, adequate protection of NYBDC's interests is critical.

44. If relief from stay is not presently granted, the Debtor should immediately provide adequate protection as outlined above.

**CONCLUSION**

WHEREFORE NYBDC respectfully requested that the Court enter an order, in the form attached hereto as Exhibit H, (1) granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), or (2) requiring adequate protection pursuant to 11 U.S.C. § 361, and (3) granting such other and further relief as may be just, necessary and proper.

Dated: May 20, 2014                                             Respectfully submitted,

/s/Paul A. Levine
Paul A. Levine, Esq.
Meghan M. Breen, Esq.
LEMERY GREISLER LLC
Attorneys for New York Business
Development Corporation
50 Beaver Street
Albany, New York 12207
(518) 433-8800